Our second case on the call of the docket is agenda number two, case number 113600, People v. Cregan. Counsel for the appellant, please proceed. May it please the Court, Counsel. Good morning. My name is Amber Corrigan and I am an attorney with the Office of the State Appellate Defender and I represent the defendant appellant in this matter, Carlos Cregan. I would like to begin this morning by addressing what may be one of the more important questions raised by this case, and that is whether or not the reasoning in Arizona v. Gantt applies in the non-vehicle context. The facts of this case demonstrate that the answer to this question must be yes, because if the reasoning in Gantt does not apply, then citizens of Illinois inexplicably have more protections in their vehicles than in their luggage. And if Gantt does not apply, then officers have unbridled discretion to rummage at will among a person's private effects. This is exactly the concern that the Gantt decision sought to address. Now, notwithstanding Mr. Cregan's position regarding the applicability of the decision in Gantt to this case, the search of a small, somewhat transparent hair gel container in Mr. Cregan's luggage exceeded the scope of a valid search incident to arrest and was unreasonable under the circumstances of this case. Chimmel teaches us scope. Here, the officers in the trial court were looking, acknowledged that they were looking for weapons, or that seemed to be the concern. When the officer, Krieger in this instance, sees no weapon, he looks to a container of hair gel, seeing nothing that gives him pause about the hair gel, he opens it, reaches in, and pulls out a baggie of what he thinks might be cocaine. In Chimmel, the United States Supreme Court argued, or held, that in that case the scope had been exceeded because the defendant was arrested in his home and officers then proceeded to search drawers in rooms that he was not standing in. They searched his attic. They searched his workroom. They also searched his garage. The scope of a search incident to arrest has to be commensurate with its purposes of officer safety and safeguarding evidence. And we don't have those two things in this case. Because in this particular case, Mr. Cregan was surrounded by two officers. His luggage, he was handcuffed. His hands were behind his back. His luggage was removed from him, I believe, to the side of the train station. And then officers proceeded to open the luggage, even though Mr. Cregan could not have gained access to it. And then upon seeing nothing out of the ordinary, no weapons, if officer safety really was the concern, they then go to an inoxious hair gel container. Officer Cregan readily admits he could tell it was half full. He didn't see anything out of the ordinary. And then he proceeds to open it. And when we look at Gantt, which again we are arguing applies to this case, they specifically held in Gantt, you can only search an area when it is in the arrestee's immediate control. Meaning the area from within which an arrestee might gain a weapon or destructible evidence. We don't really have the evidence element in this case, because the trial court found, correctly found, that there was no way they would be searching for evidence when Mr. Cregan was being arrested on a civil warrant for failure to pay child support. And we also know, based I think on the facts, that the weapon wasn't a concern. Again, he does not have access to his luggage. And then leaving the luggage aside, we move to the container of hair gel. I have a question with regard to officer safety. What if the officers did give up the luggage to Collins? And if there was a gun in the bags, Collins would have had access to it. How does that apply? And also I have a question about Shakur, the case. How does that apply to our case today? The Shakur case? Oh, the Shakur case, sorry. Well first, let me start with your first question about Ms. Collins. I don't think in this particular circumstance, Ms. Collins is at issue. The reason being, when we look at these cases, they're specifically dealing with the arrestee. In this case, Ms. Collins is simply arriving at the train station to pick up an acquaintance. There is no evidence in the record to suggest the officers were concerned about her. She's only briefly identified. I think one of the officers says a white female. It's not about her, it's about what might be in the bags that belong to the defendant that might have been a gun in there. And if they had given it up to someone, Ms. Collins, that might have been not in their safety. I don't think on these particular facts, that's an issue. But let's say it was, that there possibly could have been a weapon in the luggage. Maybe that allows the officers to get into the luggage, but it then doesn't explain opening the hair gel container. Because certainly there, it has to be reasonable, and it has to go back to the justifications, which are officer safety and looking for evidence of the crime, which we don't really have the evidence of the crime factor in this case. But again, it's the hair gel container. My problem with the explosives argument is twofold, and kind of relates back to what Gant and Chimmel were suggesting, is that the search has to be reasonable. I don't think in this particular case we can say that it's reasonable that there might have been explosives in that hair gel container. I mean, if you're going to say that's reasonable, that they might have explosives in there, then what about cyanide gas and, you know, a biological weapon? I mean, does it make any difference that this is in a public venue, a train station, where presumably there's all kinds of people around and might be safety of the crowd or concern for those kinds of issues? Does that have any impact on the analysis? I don't believe it does, again, in this particular case, because this arrest occurred at 9.30 p.m. They had moved Mr. Gregan and his luggage kind of out of the way. And the other thing that's interesting, and Justice Scalia kind of touches on this in his concurrences, but this concept of if you're so concerned with officer safety, then why wouldn't it in every case be more effective to remove the defendant to a squad car and place them in a squad car? Again, if your concern is explosives or something that's going to harm everyone, it doesn't make any sense to open it on a platform where it could affect, you know, several people standing there. And the other thing that I find interesting is, you know, I'm no expert in explosives, certainly, but I don't know that you would open the container and go sticking your fingers into something that you think might have an explosive agent in it. And I want to go back to the question about Shakur. I mean, I think Shakur is relevant in that the Third Circuit specifically said they didn't agree with the State's argument there that GANT only applies to vehicles. And for the same reasons that we're arguing they have to apply, because it doesn't make any sense when you look that GANT was based on Chimel, which was a search incident to arrest in someone's home. Again, the idea being that Chimel stands for this idea that it has to be in the immediate control, meaning the area you go into where there could be a weapon, where there could be evidence of the fruits of the crime, and also, you know, if it's reasonable that it's in there reaching distance. What about Davis that indicated that GANT had, quote, adopted a new two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional? Didn't the Davis court see the GANT decision as applying to automobiles? I think the Davis court did see that. And what we're arguing here is that GANT, because it's relying on Chimel, cannot apply to just vehicles. And let me clarify, there is... So Davis is wrong? I believe so. I believe, but I also, not wrong in the sense that where I'm going with this is, in GANT, he says there is something particular to a vehicle search. And that's where we get this language of if it's reasonable to search for fruits of the crime in a vehicle. That is specific to a vehicle, and I think what they're talking about there is this concept that we have a reduced expectation of privacy in our vehicles. So that certainly, I think, is relevant to the vehicle context, and that is where Davis, I think, is getting that. But on a whole, GANT is going back to the limitation in Chimel, and Chimel is based on a search in a house where we arguably have the most protection. And we also, you know, in this particular case, we have more protection in our luggage than we do our cars. And the hair gel, wouldn't Robinson argue against your position that the hair gel couldn't be searched incident to the arrest? I'm sorry, could or could not? Could not. Arguing your position is that the police should have never gotten to the hair gel. Correct. Wouldn't Robinson say something different to that? I think Robinson focuses more on what's actually on the person. You know, Robinson is looking at it's a crumpled up cigarette package in someone's pocket. So I think their focus was more right on the person rather than something that may or may not be immediately associated with the defendant. And, you know, the limitation in Robinson, and then which leads to the issue about Hoskins, is this concept that it's lawful based on the custodial arrest. I don't believe that reasoning survived GANT. What about Felton? How does that apply? I mean, didn't it bring out the fact that they focused on the time of arrest as opposed to the time of search? Well, I believe Felton's main focus, you know, certainly in Felton they did say that the scope of the search must be strictly tied and justified by the circumstances which rendered it permissible. But from Felton we get this language that the compartment, you know, the compartment, anything in the immediate vicinity or the compartment is fair game. At the time of the arrest or at the time of the search? At the time of the search. And in Felton, the issue with Felton really, you know, they said while it's based on the need to disarm and discover evidence, it doesn't depend on, they have this language from Robinson where they say it doesn't depend on what a court may later decide was the probability in a particular arrest situation that they're going for weapons or that they're going to find the evidence. And that's the exact language that Gant really undermines. Well. And I mean also. Back to Felton for just a minute. Didn't Felton hold that the officers were entitled not to just search the general interior of the vehicle but also any containers, right? Yes. They're looking at the passenger compartment always being within reach. Back to Justice Burke's question. Why would that be not analogous to searching a suitcase and also any containers, namely the hair gel? Well, I don't think it's relevant any longer under the standard proposed in Gant because in Gant we go back to CHML, which is this reaching distance rule. And they specifically in Gant talk about Felton and this concept that, you know, based on the arrest, we're going to say that every time there's a vehicle involved, you're within the reaching distance of the passenger compartment. And they talk about that. If that is the standard, then you're basically evaporating the protections of the Fourth Amendment. If we believe that Davis sorted out some of the confusion surrounding Gant, does your position fail? I don't believe it does because, again, I think Gant focuses on us on CHML, and CHML is not a vehicle case. I think the language that's specific in Gant to vehicles is this idea that if a defendant is secured and removed like he was in Gant, there's still this aspect because of the unique circumstances in a vehicle that if it's reasonable to believe that there's evidence of the crime, then you can search. And we wouldn't have that aspect, obviously, in this case because we know it's not reasonable to go searching for evidence of a civil warrant for outstanding, you know, for the failure to pay child support. But isn't that where Shakur comes in, explaining that Gant isn't so narrowly read? Exactly. You know, Shakur, again, disagrees with what I believe is the state's position here, which is that Gant only applies to vehicles. And, you know, I think it's interesting, too. In People v. Hoskins, this court itself stated that the fact that Belton and Robinson were vehicle cases couldn't be used to distinguish their case. And, again, I think what we're going back to in Gant is the concept in CHML that it has to be limited. The search has to do with the purposes of officer safety and evidence, destructible evidence of the fruits of the crime. Because otherwise, you are eviscerating, so to speak, the Fourth Amendment. But going back to Shakur again, I mean, aren't the facts in Shakur very similar to the facts in this case? Because there was an arrestee that was handcuffed in a hotel lobby, guarded by police, with a bag at his feet, with an accomplice in the lobby. And the court concluded that the search of the bag was actually valid and that the reach to contrary result would essentially eliminate the search incident to an arrest doctrine. Yes. The Shakur court did, in fact, find that the search was valid. But they were looking at some facts and circumstances that we don't have here. These facts seem pretty close. I would agree that they're fairly similar. But I think the key differences in this case are, A, we have the container within a container, which they did not have in Shakur. We also have the fact that in Shakur, they talk about the fact that the defendant was an extremely large man. They were having trouble handcuffing him. And at one point, you know, they only had his hands in the front. So the argument could be that he was still within reaching distance of his luggage. They were also in the middle of a very, very crowded, that fact is in there, a crowded hotel lobby. And he actually has what would amount to a co-defendant somewhere near him that the officers are kind of trying to figure out where that person is. So those facts are very different than what we have here. And the other thing in Shakur, it was a violent crime. It was armed robbery. Again, in this case, this is an outstanding warrant. It's a civil in nature. And then we also have the addition of Lindsey Collins, who, you know, was there to take the bag, certainly. But we then also have the container within a container. We don't just have a gym bag, as I think it was in Shakur. I want to just briefly touch on the argument regarding people v. Hoskins in my remaining time. Again, we're specifically focusing on the language in Hoskins, you know, that talks about it's simply on the lawful custodial arrest. I do not believe that is a proper standard anymore in light of Gant. Gant takes us back to the underpinnings of Chimel. Chimel was a house. It was a house case where we arguably have the most privacy. And again, in a vehicle, we have less privacy than we do in our luggage. And in this particular case, we're not just talking about a search of luggage. We're talking about the search of a container within that luggage, a container that arguably the officer could see into. Thank you. And if there are no more questions, Mr. Cregan respectfully requests that this Court reverse the decision of the appellate court and vacate Mr. Cregan's conviction and sentence. Thank you, Your Honors. Thank you. Counsel for the appellee. Good morning, Your Honors. Ms. Corrigan, may it please the Court, my name is David Iskowich with the Illinois Attorney General's Office on behalf of the people. I guess I'll start where my able opponent just left off with respect to Hoskins. The defendant's entire position in this case and the entire predicate for her attempt to get this Court to overturn the appellate court is that this Court should overrule its decision in People v. Hoskins from 1984. That's significant for two reasons that really weren't touched upon too much during the opening but I think that are important for driving the analysis of this appeal. We made the argument in our brief that this issue was forfeited because it was not included in the post-trial motion. The defendant in response argues that plain error rescues that claim or salvages that claim for substantive review. However, if the defendant's position here is based upon overturning Hoskins, then any decision or any error made by the trial court in these proceedings cannot have been clear or obvious because it was relying on that good law, Hoskins, at the time it rendered its decision in the case. Therefore, his plain argument is cut off from the get-go because there was no clear or obvious error that would have been apparent to the judiciary below. And on the very back end of our argument, we have a good faith argument. That good faith argument is that the officers here were acting in good faith when they conducted the full search of the defendant's luggage based upon this Court's decision in Hoskins. So if Hoskins turns out to be bad law, and I'm going to get into why it's not in a moment, but if it turns out to be bad law now after this Court renders its decision, it cannot be said that the officers acting at the time in good faith on that law were acting in a way that was grossly negligent or in a way that subverted intentionally the defendant's Fourth Amendment rights. So that's the front end on plain error and the back end on good faith. The defendant's entire argument here predicated on overturning Hoskins really does close the door for those two parts of this argument. With respect to the main part of this argument. Just that last point. Actually, Gantt hadn't been decided at the time before it had been conducted? Gantt had been decided, Your Honor. However, what the defendant here is trying to do is take the vero nero ruling in Gantt and apply that to all non-vehicle contact searches. Our view is that Gantt certainly reaffirmed or reiterated the Schimel principles. And what had been happening prior to Gantt was that courts were really kind of taking the Belton rule regarding vehicle searches to the breaking point. They weren't conducting interior vehicle searches, incident to custodial arrests, while the RSDs were out and away and secured, as in Gantt, handcuffed and placed in a squad car. The dual rationales underlying the Schimel search incident to arrest rule to preserve evidence and to prevent retrieval of weapons was pretty much out the door under those circumstances. That doesn't mean, however, that Gantt changed the calculus with respect to the non-vehicle context, as we have here. And the facts here show that the defendant was arrested as he alighted from a train. He was a known gang member. The officers knew this. He was a Satan disciple. He was wanted for an outstanding civil warrant. I believe it was for failure to pay child support. He exited the train with his luggage, I believe a duffel bag and a regular suitcase. The officers noticed that he made contact with a woman before he, just as getting off the train, he made contact with a female, unknown to the officers. Upon his arrest, he dropped the bags and requested that those bags be handed over to his friend, Ms. Collins. At that time, he was handcuffed, and the officers conducted a routine search of his bags in accordance not only with Schimel, but also with Hoskins. The Schimel rule comes in here because those bags, under the facts of this case and this record, were certainly within his reach. They had been in his possession. The defendant's main argument in this regard is that he was handcuffed and that two officers who accompanied Officer Krieger to effect this arrest were standing near him. That's all and good, but what the real question here is, is what would a reasonable officer do and think under these circumstances? We have a gang member on an outstanding warrant who's arrested, a couple of bags sitting there, and an unknown accomplice or friend or somebody, somebody who at least picked him up at the train station, awaiting in the wings. It was completely reasonable under these circumstances for the officers to undertake a search incident to arrest of the luggage. Is the key fact that the officers had some information that he was a gang member? No, it's not, Your Honor. I'm just adding that because the Supreme Court has instructed that the reasonableness of any intrusion like this can be evaluated under the totality of the circumstances. So if it was just the evidence that he was being arrested on this warrant for failure to pay child support, then this concern of officer safety would still be in play and everything about him could be searched? It would, Judge. I added that and I added some other facts. Well, I didn't add. I alluded to other facts in the record, the fact that it was a public place, the fact that there was a person waiting in the wings for him. These all enhanced the situation, perhaps heated up the situation a bit more than it might have, but that's not to say that if Mr. Cregan had been an Eagle Scout leading a troop and was arrested for some outstanding warrant, the law says that in the search of his possessions incident to arrest, this Court's law and Supreme Court law say that that kind of search would still be within the scope of the Fourth Amendment. So the reasonableness of the search is underlined by a couple of things that could have happened here. Any reasonable officer in the field could have foreseen. Again, I noted that the defendant was only handcuffed. He wasn't restrained in any other way. The defendant was free to use his feet to kick, to run, to try to escape, whether to kick the bag toward his accomplice, to kick the bag to spill some kind of contents on the floor. These are all contingencies that officers in the field face every day, and as Schimel and Hoskins recognize, have to be prepared to face if they're going to be conducting their business in the safest way possible. So the initial opening of the suitcase is amply supported by both Supreme Court and this Court's precedent. Now, the container search. The defendant also contends that the opening of the container violated his Fourth Amendment rights because it was simply unnecessary to discover any fruits of crime or to discover any weaponry of that sort, and it really did go beyond the scope of the Fourth Amendment. Robinson, however, is instructive in this case, as is this Court's decision in Hoskins. Robinson found that the discovery on the person of the defendant of a cigarette pack, something as small as a cigarette pack, was searchable based solely on the fact of the legal arrest. It was the lawful arrest that provided the officers with the authority to engage in that conduct because at that point the defendant's Fourth Amendment privacy rights were reduced, given to his custodial status. The same rationale applies to the container search here. The defendant was seen in possession of these bags as he alighted from the train. As he put them down, he was arrested. The officers were well justified to go and take a look, not only in the bag, but in the containers in the bag. And in this respect, I'd like to bring in Belton a little bit. In Belton, the Supreme Court, as the justices were discussing earlier with my opponent, allowed a full vehicle search, with the exception of the trunk, but a full compartment search, not only of the areas in and out of the passenger and driver's side areas, but also of containers that might be held in the passenger or driver's side compartments. And in endorsing that more sweeping search in the vehicle context, I note that the court cited Robinson with approval for that proposition with respect to containers. So container searches certainly are well within the scope of searches as contemplated, not just by Belton in the vehicle context, but by Robinson in the non-vehicle context, and, of course, by this Court in Hoskins. That being the case, the search of the suitcase was appropriate under Fourth Amendment standards in this Supreme Court case law, as was the search of the container in the baggage, the size of which doesn't matter. Robinson, again, recall, endorsed the search of an object as small as a cigarette packet that was not just a cigarette packet, but a crumpled up cigarette packet that the officer had to uncrumple. Mr. Iskowich, in this case, what was the purpose of the arrest? What was the charge? In Robinson, the driver was pulled over for driving on a suspended license. And upon his exit from the car, the officer searched him. The Supreme Court said that the original justification for the arrest played no role in the officer's subsequent, the scope of the officer's subsequent search, for it is the custodial arrest standing on its own legs that provides the adequate justification for that kind of search. The container in this case, I note, is in the record. There's a photo of it in the common law record, and the common law record is quite short. It's very easy to find. It looks like it's about the size of a coffee mug, perhaps with a screw top. The officer couldn't see anything inside but hair gel, but be that as it may, he was still entitled to open it under prevailing law, did so, found the cocaine, and seized it in accordance with not just this Court's precedent, but with Supreme Court precedent. That being the case, there was no Fourth Amendment violation here. This Court need not overrule Hoskins because Gant did not suggest that that case or any cases like it would be abrogated. It applied to a vehicle case, and while the Schimel rationale certainly did apply there, in one way to preclude, to permit suppression of the evidence, the distinct facts we have on the record here should guide this Court's resolution the other way and affirm the Court's decision to admit the evidence and the appellate court's decision to affirm that decision.  Of course, Your Honor. If the facts were that this defendant was in a car and the car was stopped, luggage was next to him on the seat, how would Gant apply it? What would happen then? Well, it would depend on what the officers did with the defendant. Let's assume that he was sitting in the car, they handcuffed him, they then took the bag and the luggage, they searched the luggage, they found the hair gel, they opened up the hair gel, but we can't say. If they found it, if they searched the luggage in the car next to him, I think Gant would say that search is okay because he's in proximity to the luggage and under an arrest situation like that that's still in flux. So if he was taken out of the car and handcuffed, then what? His proximity to the vehicle, I think, the Gant court would say would be enough to allow the search. Gant was a case where the officers physically took the suspect to a different area, locked him in a squad car with handcuffs on. They said under no possible, it was simply unreasonable for an officer to believe, and the touchstone here is reasonableness, it's unreasonable for an officer to believe that he would be able to access that stuff. Where the defendant, while cuffed, is still in proximity to his things, I believe that Gant would think long and hard about not allowing the officers to conduct the search at that time in his presence. The officer safety concerns under your set of facts, I think, would demand that the search go ahead without delay. So even if Gant applied, the fact that he's still standing there next to the bag would give the officers the authority to search the bags and the hair gel? Correct. If I understand Your Honor's question, what if Gant applied, meaning the shimmel rule? Meaning that it's not, the shimmel rule, it's not limited to the car, all those kind of things. Assuming we accept that, all those arguments of the defendant. You're saying that even if we accepted all those things, that the fact that in Gant, the defendant, Mr. Gant was, I love how we're talking about Gant applied, or Gant says it, it was Mr. Gant himself. Mr. Gant was taken away from the scene to another car by a police car, handcuffed to the other car. It's the distance from the container, the suitcase, whatever, that is the key. Well, yes, Your Honor, although drawing lines like that in the Fourth Amendment context, as you know, can get really messy. I think that in our case, he's cuffed, he's within proximity, he's in proximity to the stuff, his luggage. That search under shimmel, a reasonable officer could believe that any number of things could happen during that flux. Gant was termed by one court I cited, one case I cited in my brief, I believe it's the Feaster case from Maryland, which is a very, very insightful case with respect to line drawing in these circumstances. I suggest it. It forms a very important part of my brief. But if the defendant is cuffed and luggage is in proximity, shimmel would certainly allow, under those circumstances, the officers to conduct a search for safety reasons, unlike the circumstances in Gant. Yes, Your Honor. The issue, but we have a third person there. Yes, Your Honor, we do. And so how does Shakir apply here? Is it similar? It is similar, Your Honor. And the circumstances with that third party and the officers assessing the situation at that time. It is important, Your Honor, and I thank you for asking. I hadn't talked about Ms. Collins in much detail yet. And this formed a large basis of the trial court's decision to deny the motion to suppress. And it also formed a part of the appellate court's decision to affirm that decision. And this is perhaps a completely independent reason to allow the search under the circumstances. I couldn't find any authority on point where a search was conducted with the express purpose of checking it out before giving it to a third party who was present. But reasonableness and common sense dictate, as it dictated in Shakir and this case, that before the officers were handing over this luggage of a gang member to a friend who picked him up at the airport, that they at least take a look inside the luggage to make sure there was nothing in there that could be used to harm them upon its delivery to her. And I note in this regard that there was contact between Ms. Collins and the defendant just as they got off the train. And a reasonable officer under the circumstances certainly could have believed that that communication at that point might have signaled some kind of plan of action. The defendant might have said, I'm not going in again. I've got this in the suitcase. Take care of it when I push it over to you. Or when I give it to you, I want to make sure that you know where stuff is within there. This, of course, is stuff that any reasonable officer in the field would be concerned about. So Ms. Collins' presence here is certainly significant in our argument that the decision by the trial court should be affirmed. But I also want to stress that even standing alone without Ms. Collins and without Mr. Cregan's gang tote testimony, as Justice Tice mentioned earlier, the officers still would have had ample authority to search not only the luggage but also to go into the container that was in the luggage where the contraband was found. If there are no further questions from Your Honors? Yes, Your Honor. Is there a forfeiture issue in the case? There is, Judge. Just give me briefly. Tell me about that. Sure, Justice. There is a forfeiture issue because the issue was not included in the defendant's post-trial motion. The issue was litigated at length and the trial proceeded as a stipulated bench trial based upon the evidence adduced at the suppression hearing. The defendant, however, did not file a post-trial motion as this court requires and has required for decades now. So we've argued that the issue is forfeited and that plain error does not apply. Do you point it to an exception? The defendant points to a number of exceptions, Your Honor, the first one being plain error. As I mentioned in my introductory remarks, that does not apply because any error here cannot have been plain by definition because any error would be predicated on this court overturning Hoskins upon which the trial court relied. And so no error can have been apparent to the trial court at the time it rendered its decision. But you also said that the forfeiture rule was only applicable in capital cases and therefore would not apply to this defendant. Well, the appellate court got to the issue via this argument. Because in Enoch, the court carved out an exception for what it called constitutional issues. For a general position, though? Yes, for constitutional issues. Any cases to support that position? I don't, Your Honor. We suggest that the line in Enoch that says that all constitutional issues are immune from this kind of waiver should be, I suggest the court revisit that. If not in this case, but in other cases, a constitutional error exception. But the currency of the law is that it could apply to this defendant? It could, as the law stands now, yes, Your Honor. Okay. We're merely suggesting that the court take a look at that lest the exception swallow the rule. And in our post-capital world where cases were viewed with much scrutiny, we think that that rule may have outlived its usefulness. Thank you. Thank you, Your Honors. Thank you, Mr. Iskowich. Any rebuttal, Ms. Corrigan? I just have a few brief points. Going back to this, one of the first things I think the State talked about, which is that, you know, this exclusionary rule and this good faith reliance on Hoskins. The problem with that argument, one, is that Gantt was issued a full six months before the search in this case. And also, Gantt, again, is taking us back to Chimmel, which has been around for decades. So to say that the officers in this case are relying in good faith on Hoskins, I don't think is an accurate statement of the law because, A, Gantt was issued six months prior to, and also Gantt is focusing us back to Chimmel, which I think has always been, as the Gantt court indicated, always been the state of the law and courts were applying it too liberally. I also want to direct this court's attention to the facts of this particular case. For the idea that officer safety was a reasonable concern here. We have a defendant who is secured by two officers. His bags are removed from his presence. They are moved to the side of the train station. And when the officers are specifically asked, did he ever make an effort to get back to his luggage, they respond, no, he was in handcuffs. Officer safety is not what was at issue in this case. And even with Lindsey Collins being there, it belies a finding that they were worried about officer safety. They never frisked her. They don't even talk about frisking him. They move in on him. They secure him, his hands behind his back. They remove his luggage almost immediately and open it up. They don't find any weapons when they open the bag. But instead of stopping, they then proceed to open this container of hair gel. This isn't a concern about officer safety. It can't be. Those were the points I wanted to make. If there are no questions, again, what we're asking for is that the appellate court's decision be reversed and that Mr. Cregan's conviction and sentence be vacated. Thank you very much, Your Honors. Thank you. Ms. Corrigan, Mr. Iskowich, we thank you for your arguments today. Case number 113600, People v. Cregan, is taken under advisement as agenda number two. You are excused. We're going to take about a ten-minute break. So, Mr. Marshall, we stand in recess until 1040. Thank you.